[Civ. No. 25724. Fourth Dist., Div. Two. Oct. 16, 1981.]

CITY OF ANAHEIM, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
DAVID A. BRAZZ, Respondents.

**COUNSEL**

William P. Hopkins, City Attorney, and Anthony G. Stashik, Deputy City Attorney, for Petitioner.

Banks, Leviton & Kelley, Banks, Leviton, Kelley, Drass & Kelsey, Francis B. Drass and Eugene Leviton for Respondents.

## OPINION

**KAUFMAN, Acting P. J.**—We granted the petition of the City of Anaheim (City) to review a decision of the Workers' Compensation Appeals Board (Board) awarding David A. Brazz (the applicant) a penalty for serious and wilful misconduct (Lab. Code, § 4553) based on the Board's finding that City violated Labor Code section 132a[1] which prohibits employers from discharging or otherwise discriminating against any employee because the employee has filed an application for benefits with the Board.

City contends, inter alia, that section 132a is inapplicable to the facts of this case and that therefore the penalty assessed against it was in excess of the Board's jurisdiction. We agree, and the award and decision of the Board will be annulled.

On August 15, 1977, the applicant filed an application for adjudication of claim asserting that on November 14, 1975, while employed as a lineman by the City he sustained an injury to his back and left leg arising out of and in the course of his employment. Pending adjudication of his claim, the applicant returned to work for the City. On or about September 5, 1978, however, he resigned his employment with the City and shortly thereafter was employed by the Southern California Water Company as a lineman. The application for adjudication of claim remained pending.

Although there is apparently some dispute about the number of calls, who initiated them and what was said, in early 1979, after the applicant had left the City's employ and had gone to work for Southern California Water Company, there was a telephone conversation between Mr. Jack Love, risk manager for the City, and Mr. Marshall Boswell, manager of water and electric operations for the Southern California Water Company. According to the testimony of Mr. Boswell, during

---

[1]Unless otherwise specified all statutory references will be to the Labor Code.

this conversation Mr. Love suggested that Southern California Water Company would not find the applicant a satisfactory employee and that it would be well advised to discharge the applicant from employment before it experienced the same trouble the City had.

Southern California Water Company did not discharge the applicant however, and he suffered no loss of employment or other adverse consequence as a result of what Mr. Love had said. Nevertheless, on or about March 22, 1979, the applicant filed in the still-pending proceeding for adjudication of claim a document entitled "ALLEGATIONS AND SPECIFICATIONS OF VIOLATION OF LABOR CODE § 132a."

Applicant's claim for benefits otherwise proceeded and, after the Board granted the City's petition for reconsideration to have the applicant examined by an independent medical examiner, ultimately resulted in an award to applicant of $5,635 payable $70 per week based on a permanent disability rating of 22 percent. That award is not in issue on review.

Meanwhile, however, applicant's claim for a serious and wilful penalty based on Mr. Love's telephone statements to Mr. Boswell proceeded to hearing. The WCAB judge noted a conflict in the testimony but did not resolve it. He concluded that section 132a was inapplicable to the facts. The Board granted the applicant's petition for reconsideration for the purpose of reviewing the transcript and on January 16, 1981, issued its "OPINION AND DECISION AFTER RECONSIDERATION" assessing in favor of applicant a serious and wilful penalty under section 4553.[2]

The Board reasoned: "Although applicant was not terminated nor penalized for availing himself of the remedies of workers' compensation, the action of his previous employer is inconsistent with the declared policy of Labor Code section 132a and hence, a violation may be

---

[2]Section 4553 reads: "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following:

"(a) The employer, or his managing representative.

"(b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof.

"(c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof.

"But such increase of award shall in no event exceed ten thousand dollars ($10,000); together with costs and expenses incident to procurement of such award, not to exceed two hundred fifty dollars ($250)."

upheld. .... Moreover, the fact that applicant was not employed by the individual or organization discriminating against him does not make Labor Code section 132a inapplicable. The evil which the legislature sought to prevent is all discrimination against workers having its basis in an industrial injury. The policy of protection will not be effectuated if such discrimination is found not actionable pursuant to the statutes [*sic*] because the defendant was not the employer at the time of the discriminatory act and would be inconsistent with the interpretation of the preamble as found in [*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 666-669 (150 Cal.Rptr. 250, 586 P.2d 564), and *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 211, 214-216 (167 Cal.Rptr. 65)]."

On review the applicant contends that since the Board is the agency charged with enforcing section 132a, its interpretation of the statute is entitled to great respect by the courts and should be accepted unless it is clearly erroneous. (See *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at pp. 668-669.) While we fully recognize the rule cited, the Board's interpretation of section 132a in this case was clearly erroneous because it is contrary to the language of the statute. ■ Final responsibility for the interpretation of a statute rests with the courts. (*Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Lake Forest Community Assn.* v. *County of Orange* (1978) 86 Cal.App.3d 394, 407 [150 Cal.Rptr. 286].)

■ Recognizing that the language of section 132a proscribes discrimination by an employer against an employee, the Board dealt with the fact that City was not the applicant's employer at the time of the discriminatory act by resorting to the declared statutory purpose and policy "that there should not be discrimination against workers who are injured in the course and scope of their employment." (§ 132a.[3]) Resort

---

[3]Section 132a reads in pertinent part: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

"(1) Any *employer* who discharges, or threatens to discharge, or in any manner discriminates against *any employee* because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award or settlement, is guilty of a misdemeanor and subject to the provisions of Section 4553. Any such *employee* shall be entitled to *reinstatement and*

is appropriately had to the purpose of and policy behind a statute when its language is ambiguous, but the meaning of a statute is first to be determined from its language, according the language used its usual and ordinary import. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512].) The language of section 132a makes clear that what is prohibited is the discharge or threatened discharge of or any other manner of discrimination against an employee by his or her employer on account of the employee's having indicated an intention to file or having filed an application with the Board or on account of the employee's having received a rating, award or settlement. The statute repeatedly and consistently refers to the "employer" and the "employee." (See fn. 3, *ante.*)

Applicant urges that the words "employer" and "employee" as used in section 132a must at a minimum encompass those employers and employees who had an employment relationship at the time of the industrial injury, regardless of whether there was an employment relationship at the time of the discriminatory act. Not so. The principal remedies provided by the statute, aside from the serious and wilful penalty, are reinstatement and recovery of lost wages and employee benefits, necessarily implying an employer-employee relationship at the time of discharge or other act of discrimination. Moreover the statute specifies its own period of limitations: "[S]uch proceedings may not be commenced more than one year from the *discriminatory act* or *date of termination* of the *employee.*" (Italics added.) Clearly the statute contemplates an employer-employee relationship at the time of the discharge, threat of discharge or other discriminatory act.

---

*reimbursement for lost wages and work benefits* caused by such acts of the *employer.*

" . . . . . . . . . . . . . .

"Proceedings under this section for increased compensation as provided in Section 4553, or for reinstatement and reimbursement for lost wages and work benefits, are to be instituted by filing an appropriate petition with the appeals board, but such proceedings may not be commenced more than one year from *the discriminatory act or date of termination* of the employee. The appeals board is vested with full power, authority, and jurisdiction to try and determine finally all the matters specified in this section subject only to judicial review, except that the appeals board shall have no jurisdiction to try and determine a misdemeanor charge. The appeals board may refer and any worker may complain of suspected violations of the criminal misdemeanor provisions of this section to the Division of Labor Standards Enforcement, or directly to the office of the public prosecutor." (Italics added.)

Board's reliance on *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 658, and *County of Santa Barbara* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d 211, was unwarranted. The *County of Santa Barbara* case merely applies the *Judson Steel Corp.* decision to a different set of facts, and the language of the court in *Judson Steel* supports our conclusion.

In both the cited cases it was uncontroverted that an employer-employee relationship existed at the time of the discriminatory act complained of, and the question was whether the employer's conduct constituted the kind of discriminatory conduct proscribed by the statute. The statutory policy and purpose were highly relevant to resolution of that question and the decision in each case rested in large part on the statutory purpose and the underlying public policy. In contrast, here there is no question but that the conduct found by the Board would be discriminatory within the meaning of the statute; the question is whether the statute applies to such conduct toward a nonemployee (former employee) by a nonemployer (former employer). The language of the statute, as we have seen, supplies the answer.

Moreover, in the *Judson Steel Corp.* case, in discussing whether or not the conduct of the employer constituted discrimination proscribed by the act, the court stated: "Although section 132a specifically provides sanctions against '[a]ny employer who discharges, or threatens to discharge' an employee, as the board in the instant case noted, the provisions of the statute are not limited to those actions. Section 132a further prohibits *employers* 'in any manner [to] discriminat[e]' against industrially injured *employees*; the section thus refers to other ways in which an *employer* may unlawfully penalize an *employee*. Since the evidence establishes without question that loss of seniority adversely affected applicant Maese, the board properly found that loss of seniority operated as a penalty within the scope of discrimination prohibited by section 132a." (22 Cal.3d at p. 667; italics added.)

The concern expressed by the Board that the protective statutory policy "will not be effectuated if such discrimination is found not actionable pursuant to the statutes [*sic*] because the defendant was not the employer at the time of the discriminatory act" is not well founded. The courts of this state are perfectly capable of redressing injury resulting from conduct such as that found here in an action for wrongful interference with contractual or advantageous economic relationship.

(See e.g., *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 822-827 [122 Cal.Rptr. 745, 537 P.2d 865]; *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39-40 [172 P.2d 867]; *Blender* v. *Superior Court* (1942) 55 Cal.App.2d 24, 26-27 [130 P.2d 179]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 384-386, 392-393, pp. 2636-2638, 2643-2647.) In any event, whether or not the statute ought to be amended to extend to a situation like that in the case at bench is a question for the Legislature not the courts.

Board's "OPINION AND DECISION AFTER RECONSIDERATION" dated January 16, 1981, and the award contained therein are annulled.

McDaniel, J., and Morris, J., concurred.

The petition of respondent Brazz for a hearing by the Supreme Court was denied January 20, 1982. Bird, C. J., was of the opinion that the petition should be granted.